The instant proceeding arises out of motions to dismiss wherein it is claimed that the State's Attorney failed to disclose the existence and contents of taped telephone conversations which conversations were made by the various defendants while in police custody subsequent to their arrests.
The following factual determination has been made from a review of the evidence: On June 28, 1989, Jose Barreira was shot to death while he was driving his automobile along Route 8 in Waterbury, Connecticut.
A subsequent police investigation of the homicide led to the issuance of arrest warrants for Dennis O'Connor (O'Connor), Jude Sinchak (Sinchak), Charles Christiano (Christiano), Bruce O'Neil (O'Neil), Yves B. Laubier (Laubier) and Daniel Oliwa (Oliwa) and Barry Lasky (Lasky). During July and early August, 1989, the defendants were arrested on the above mentioned warrants. All the CT Page 3260 defendants were taken to the Connecticut State Police Barracks at Troop A, Southbury, Connecticut (Barracks) for -processing by members of the Connecticut State Police Crime Squad. (Squad).
At all times relevant to this particular matter, the Barrack's telephone system consisted of twenty-five lines and ten of which lines were accessed for taping. The ten lines that were accessed for taping were wired to a dictologue which machine did the actual taping.
The Woodbury Telephone Company (Woodbury) installed the telephone lines and installed the ten lines to the dictologue. Also, Woodbury installed a "coupler" to the dictologue which "coupler" emits a "beep" over a taped line so that the parties using said line knows that their conversation is being taped. At all times relevant herein, the "coupler" was in operating condition and working properly.
The telephone lines that were susceptible to being taped are as follows: 1) two of the three lines on the "9-1" Waterbury exchange; 2) the two numbers exclusive to the Squad (the rotary phone and the "264" number) were not taped; 3) the "9-5" Southbury exchange was not taped; 4) the three lines on the "9-2" Danbury exchange were susceptible to being taped. Subsequent to July and early August, 1989, the telephone system was checked and it was ascertained that the "coupler" was working properly and that all of the lines that were being taped had a "beep" to signify that the conversation was being taped.
Subsequent to their arrests and while in police custody at the Barracks, O'Neil, Laubier, Oliwa and Lasky did not make any telephone calls. While O'Connor was in custody at the Barracks, he made several calls on the Squad's private phone. On all these calls, the "9-5" line was used. While Sinchak was in custody at the Barracks, he made one collect call to his attorney over one of the Danbury telephone lines. During this conversation, his attorney claimed that he did not hear a "beep" over the line. However, the "coupler" was properly installed and working properly during this time so that if the line was being taped, a "beep" would be heard on the line. Further, at no time have the contents of any of these telephone conversations been disclosed; and on the Sinchak telephone conversation, the attorney has claimed the attorney-client privilege which privilege has not been waived by Sinchak.
Subsequent to another unrelated case wherein it was claimed that telephone calls were being taped at the Barracks, motions for discovery in accordance with Connecticut. Practice Book Sections 741(1) and 750(3) were filed seeking discovery of any conversations that were recorded and the contents of said CT Page 3261 recordings. Thereafter the State's Attorney filed a compliance stating in effect that to his knowledge none of these conversations were taped.
Upon review of the state's compliance as it applied to the claimed telephone taping, the defendants filed motions to dismiss, which in part, claimed that the charges should be dismissed in that the state failed to fully and properly respond to their request regarding the existence of tapes or transcripts of taped telephone conversations, if exculpatory, within the meaning of Connecticut Practice Book Section 741(1).
A basic concept in jurisprudence is that the burden of proof is upon the one who pleads a particular issue. Blake v. Torrington National Bank and Trust Company, 130 Conn. 707, 708
(1944). The defendants, having filed the motion to dismiss, have the burden of proof of establishing that there were taped conversations, the tapes were destroyed and that the destruction was the result of bad faith or negligence. The defendants have failed to show that there were any illegally taped conversations.
At the outset, it is quite clear that only one telephone conversation that was susceptible to any possible taping procedure i.e., the telephone call by Sinchak to his attorney. O'Connor and Christiano made several calls to various persons. There is no conflict in the evidence that these calls were made from a "9-5" line which was an untapped line. As to the O'Connor and Christiano telephone calls, the only conclusion that can be reached is that they were not taped and there was nothing for the State's Attorney to disclose in accordance with the defendant's discovery requests.
As to the Sinchak telephone conversation, the defendants have not sustained the burden of proof imposed upon them that this conversation was taped. The more credible and believable evidence would lead to this conclusion that the conversation was not taped. At the time in question, the "coupler" was in working order and if the line were taped, a "beep" would appear on the line. The defendants commence their legal arguments on the motions to dismiss with a misplaced assumption i.e., telephone conversations were taped. On the evidence presented, the only conclusion that can be reached is that there was no taping of any conversations; and consequently there is no taped statements for the State's Attorney to disclose.
In that the defendants have not established that there were illegally taped conversations, it would serve no useful purpose to discuss what would be the consequences of tapes that were destroyed either in bad faith or through negligence.
Therefore, the defendants' motions to dismiss based on the CT Page 3262 proposition that the State's Attorney did not disclose taped conversations are denied.
BYRNE, J.